Version 02/03/2020

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Baltimore**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| LP PROPERTIES, LLC | * | Case No. 24-13256 |
| | * | Chapter 11 (Subchapter V) |
| Debtor. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**DEBTOR'S CHAPTER 11, SUBCHAPTER V AMENDED PLAN OF**
**REORGANIZATION**

LP PROPERTIES, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), proposes the following Plan under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code").  A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests.  Appendix B. **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)  This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and**

**Version 02/03/2020**

a hearing.  Please refer to Scheduling Order _X_ [Dkt. 13] and any amendments thereto for important information regarding Plan voting and objection deadlines.

### Background

April 18, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its property and manages its financial affairs as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

The Debtor designated itself as a small business debtor, as that term is set forth in Bankruptcy Code § 101 (51D) and as it reflected on its voluntary petition, elected to have subchapter V (The Small Business Reorganization Act of 2019) of Chapter 11 apply to its case.

Pursuant to the Notice of Appointment of Subchapter V Trustee (Dk.# 7), Moniques Desiree Almy was appointed the duly qualified Subchapter V Trustee in this proceeding.

No official committee of unsecured creditors will be appointed pursuant to Bankruptcy Code § 1181 (b).

No request for a trustee or examiner has been made in this Chapter 11 case other than the standing trustee pursuant to Bankruptcy Code § 1183 (a).

No party has made any request to remove the Debtor as a debtor in possession pursuant to Bankruptcy Code § 1185.

Article I.  Source of Payments

Post-Confirmation Payments.  During the term of this Plan the Debtor shall pay its net disposable income in accordance with the terms of this Plan.

Article II.  Plan Term

The term of this Plan begins on the date of confirmation of this Plan and ends on the 60th month after that date.

Article III.  General Distributions Under Plan

The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's projected disposable income for that same period.  After payment of the foregoing claims, sums received by the Debtor shall be paid, on a pro-rata basis to allowed general unsecured claims. In accordance with §1191 of the bankruptcy Code and the terms of this Plan, the Debtor's equity security holders shall retain their interests in the Debtor as set forth on Appendix B.

Pursuant to the Consent Order granted by the Court at Docket number 53 the debtor and its secured creditor, Shellpoint agree that the value of the collateral is $175,000.00 and the balance of the loan in the amount of $326,080.63 is deemed wholly unsecured by the collateral, that Shellpoint's claim shall be bifurcated into a secured portion and a general wholly unsecured

**Version 02/03/2020**

portion; that the parties stipulate and consent to the bifurcated secured portion of the loan in the amount of $175,000.00 be paid through it's Chapter 11 Subchapter V Plan at a fixed interest rate of 5.19%; that the general wholly unsecured portion of the loan will be subject to discharge pursuant to the Chapter 11 Subchapter V Plan and the Creditor waives any payment beyond the amounts stipulated and agreed upon in the Order.  The Secured claim is impaired, and the Creditor will vote in favor of a Plan which incorporates this language. Further, the Creditor's unsecured claim is impaired, and the Creditor will vote in favor of a Plan which incorporates this language secured portion of the mortgage loan is amortized over a term of ten (10) years, the monthly principal and interest payment is $1872.44, at the end of five (5) years the principal balance on the loan is $94,500.00 but is subject to change if advances or other loan charges are accrued by the secured creditor in the event the debtor falls behind on payments as required by the order; the parties agree and stipulate that the Debtor is obligated to pay off the balance of the loan as a ballon payment in the amount of $94,500.00 subject to change as noted in the immediately preceding paragraph on or before the five (5) year expiration period of the Chapter 11 Subchapter V bankruptcy.

### Article IV.  Classification and Treatment of Claims and Interests

1. The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code.  A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **<u>Appendix B</u>**.

2. All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date.   Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3. <u>Disputed Claims</u>:

    a. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order] and, either:

        i. A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

        ii. No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

    b. <u>Delay of Distribution on a Disputed Claim</u>:  No distribution will be made on a disputed claim unless the claim is allowed by [a final non-appealable order].

    c. <u>Settlement of Disputed Claims</u>:  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

### Article V.  Payments to Creditors Under Plan

**Version 02/03/2020**

Unless otherwise provided in this Plan or indicated on **Appendix B**, funds received by the Debtor or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1.  Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2.  Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3.  All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth on **Appendix B**.

4.  After payment of the foregoing claims, sums received by the Debtor shall be paid, on a pro-rata basis, to allowed general unsecured claims.

5.  In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor's equity security holders shall retain their interests in the Debtor as set forth on **Appendix B**.  [If the Debtor is an individual, should read, if applicable, "In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor shall retain the Debtor's interest in property of the estate."]

## Article VI.  Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

## Article VII.  Secured Claims Being Modified Under § 1190
### (Only Applicable to Individual Debtors)

The Debtor does not propose any modifications governed by § 1190(3) of the Bankruptcy Code.

## Article VIII.  Trustee Compensation

The Trustee shall be paid for services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix E-1**.  All fees and expenses requested by the Trustee, including those on Appendix E-1, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## Article IX.  Attorney Compensation

The Debtor's attorney, *Kim Parker*,    *2123 Maryland Ave, Baltimore, Maryland 21218*, shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under

Version 02/03/2020

§ 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**. All fees and expenses requested by the Debtor's attorney, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

Article X.  Liquidation Analysis

Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court.

Article XI.  Debtor's Disposable Income and Plan Funding

An exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan is attached as **Appendix E**.

Article XII.  Executory Contracts and Unexpired Leases

12.01 Assumption.  Pursuant to § 365 of the Bankruptcy Code, the Debtor assumes each executory contract and unexpired lease listed on **Appendix F**, effective upon the effective date of this Plan, as provided in Article  XVI 16.02 (the Effective Date"). To the extent the Debtor proposes to make cure payments as may be required under § 365(b), those cure payments shall be made [either a date certain or as reflected on **Appendix F**].

12.02. Rejection.  The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not (i) expressly listed on **Appendix F** and assumed under this Plan or (ii) previously assumed, and if applicable assigned, before the Effective Date; or (iii) that are the subject of a pending motion to assume (and if applicable, assign).  A proof of claim arising from the rejection of an executory contract or an unexpired lease under the Plan must be filed with the Court and served on the Trustee and the Debtor no later than 30 days after the Effective Date.

12.03 Assignment. [*Intentionally left blank*.]

Article XIII.  Property Vests in Debtor Free and Clear

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

Article XIV.  Confirmed Plan Binding on Debtor and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

Version 02/03/2020

Article XV.  Discharge

Discharge.  (Consensual Plan Only) On the confirmation date of this Plan, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (iii) of a kind specified in § 1141(d)(6)(B).

Discharge. (Non-Consensual Plan Only) Upon the payment by the Debtor of the sums required under this Plan and application to the Court, the Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code.]

Article XVI.  Miscellaneous

16.01 Definitions and Rules of Construction.  The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions: [Insert additional definitions if necessary].

16.02 Effective Date of Plan.  The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

16.03 Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

16.04 Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

16.05 Appendices.  The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

16.06 Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

[16.07 Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

[16.08 Corporate Governance.  [If the Debtor is a corporation include provisions required by § 1123(a)(6) of the Bankruptcy Code.]]

Article XVII.  Plan Proposed in Good Faith

**Version 02/03/2020**

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

Article XVIII.  Retention of Jurisdiction

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

Article XIX.  [Other Non-Standard Provisions]

DATED: March 17, 2025

/s/ Kamose Tao, Managing Member , Debtor
LP Properties, LLC

s/ Kim Parker
Attorney:
Kim Parker
Law Offices of Kim Parker, PA
2123 Maryland Ave
Baltimore, Maryland 21218
Tel: 410-234-2621
Email:kp@kimparkerlaw.com

Version 02/03/2020

<br><br>

## Appendix A
(Debtor's Business History)

A.  Nature and History of the Debtor's Business or Commercial Activities:

LP Properties was specifically organized and created by its principal member, Kamose Tao to purchase and hold the real property 114 S. Stricker Street, Baltimore, Maryland 21223. The property was purchased on March 28th, 2002 by Special Warranty Deed financed by Centex Home Equity Corporation for $6,000.00.  On April 12, 2005, a second loan was secured by Deed of Trust to the benefit of Bruce and Susan Magazine., On July 26, 2006, the property was once again refinanced with a loan from America's Wholesale Lender a subsidiary of Countrywide Home Loans, in the original principal amount of $232,500.00 and the loan was placed in the name of Kamose Tao.  Kamose Tao, held the property in his own name and was responsible for maintenance of the single asset from 2006 onwards.  In the interim, the loan was acquired by The Bank of New York ("the Lender") and serviced by Specialized Loan Service.  The current balance owed on the loan to Bank of New York is $501,080.63.

A second lien was placed on the property for $25,000.00 by PBS.  On November 2nd 2017 by their attorneys, Rosenberg and Associates, LLC, the Lender filed a Complaint to Quiet Title, Constructive Trust, Equitable Subrogation, Reformation, and Declaratory Relief in the Circuit Court for Baltimore City. The essential crux of the argument was that Mr. Tao mistakenly signed the loan documents in his personal and individual capacity rather than as a member of LP Properties, LLC, a statement with which Mr. Tao takes issue.  Subsequently, the Circuit Court for Baltimore City issued an Order permitting the Title Deed of the property be changed from Kamose Tao to LP Properties, LLC to conform with the mortgage deed of trust.  LP Properties, LLC now holds title to the real property located at 114 S. Stricker Street, Baltimore, Maryland 21223 and is managed by its single member Kamose Tao.

B.  Ownership Structure of the Debtor's Business or Commercial Activities:

LP Properties, LLC is owned by a single member Kamose Tao.  The business of LP Properties, LLC is the ownership and management of 114 S. Stricker Street, Baltimore, Maryland 21223 as residential rental property.  The property currently has four tenants (including Mr. Tao).

C.  Description of the Performance of the Debtor's Business or Commercial Activities in the Three Years Before the Bankruptcy Filing and the Events Leading to the Debtor's Bankruptcy Filing:

In the Three (3) years prior to the filing of this Chapter 11 Bankruptcy Mr. Tao believed

**Version 02/03/2020**

that he was the proper titled owner of the proper and treated the asset accordingly.  The charter for LP Properties LLC lapsed and no taxes were filed in its name.  Since Mr. Tao learned conclusively through these Chapter 11 proceedings that the property 114 S. Stricker Street, Baltimore Maryland 21223 is titled to LP Properties, LLC and not to him individually he has sought to revive the corporation.  He has made efforts to handle the real property 114 S. Stricker Street, Baltimore Maryland 21223 as an asset of LP Properties, LLC and not as his personal asset. His efforts are often frustrated yet he persists in his endeavors.

   D.  Other Pertinent or Miscellaneous Information

        The Debtor filed a Motion to Determine Secured Status and reached an agreement with the creditor that the value of the property is $175,000.00.  The Consent Agreement entered between the Debtor and the Creditor was approved by the Court.  The second lien holder, PBS did not participate in the Motion even after notice of the motion was sent and not returned.  At Confirmation the Debtor propose to disallow any claim of PBS, if made, be and henceforth be disallowed.

**Version 02/03/2020**

### Appendix B

(Classification and Treatment of
Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|
| 1 | [Administrative Expense Priority Claims] | $14500.00 | Pay upon application of Attorney Kim Parker and Subchapter V Monique Almy | 100% |
| | Administrative Expense Priority Claim – Attorney Fees Claim of Kim Parker and anticipated Subchapter V Trustee Claim of Monique Almy | | | |
| 2 | $0.00 | $0.00 | Debtor has reserved this class for any priority tax claims which may be filed, although none are expected. | n/a |
| 3 | Secured Claim – Claim #1 – Mayor & City Council of Baltimore | $1995.42 | This claim should be paid in full; in equal monthly payments. | 100% |
| 4 | Secured Claim – Claim #2 | $175,000.00 pre-petition arrears | This claim should be modified in accordance with the Debtors' Motion to Determine secured status with monthly payment of $2537.80 monthly with a ballon at the end of the 60-month term. | The Value of the collateral is $175,000.00, the debt to the first lienholder is $501,080.63 which should be modified to reflect secured claim of $175,000.00 and the balance treated as unsecured. All other |

---

[1] [Describe source of estimates, e.g., the Debtor's schedules, creditors' proofs of claim, etc.]

**Version 02/03/2020**

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|
| | | | | claims should be disallowed. |
| | | | | |

**Version 02/03/2020**

## **Appendix C**

(Claims Being Modified Under Section 1190(3))

None.

**Version 02/03/2020**

**<u>Appendix D</u>**
(Liquidation Analysis)

| Item | Market Value and Basis for Valuation | Lien or Interest | Equity for Estate |
|---|---|---|---|
| 114 S. Stricker Street | $175,000.00 MA | $501,080.63 | $0.0 |
| | $175,000.00 | | |
| | | | |
| Tenant – Kamose Tao | $250.00 | Rent - Monthly | $0.00 |
| | | | |
| Tenant – Fahima Diop | $1600.00 | Rent - Monthly | $0.00 |
| | | | |
| Tenant – Greenville Peace | $700.00 | Rent - Monthly | $0.00 |
| | | | |
| Tenant – Fatuma | $1100.00 | Rent – Monthly | $0.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Version 02/03/2020**

## **Appendix E-1**
### (Projected Disposable Income)

Months 1-60       $799.05              $9588.60 per year

**Version 02/03/2020**

## **Appendix E-2**
(Assumptions and Support for Projected Disposable Income)

The debtor assumes it will continue to manage the property and secure tenants and after payment of all expenses will have funds available as described herein. The managing member Kamose Tao will continue to manage the property.

**Version 02/03/2020**

### **Appendix E-3**
(Sources and Value of Funds and Assets for Distributions)

The Debtor anticipates the sole source of income will be rental income and from other business developments of LP Properties LLC and contributions from managing member Kamose Tao.

**Version 02/03/2020**

**Appendix E-4.A**
(Summary of Payments Under Plan)

| Creditor Name | Type of Claim | Claim Amount | Payment Amount | Payment Date(s) | Paid by Trustee (T) or Debtor (D) |
|---|---|---|---|---|---|
| Bank of New York | Secured | $2049.94 | $2049.94 | 05/28/24 | Debtor |
| Bank of New York | Secured | $2049.94 | $2049.94 | 06/28/24 | Debtor |
| Bank of New York | Secured | $2049.94 | $2049.49 | 07/28/24 | Debtor |
| Bank of New York | Secured | $2049.94 | $2049.49 | 08/28/24 | Debtor |
| Bank of New York | Secured | $2049.49 | $2049.49 | 09/20/24 | Debtor |
| Shell Point | Secured | $2537.86 | $2537.86 | 10/20/24 | Debtor |
| Shell Point | Secured | $2537.86 | 0.00 | 11/20/24 | Debtor |
| Shell Point | Secured | $2537.86 | $2049.94 | 12/20/24 | Debtor |
| Shell Point | Secured | $2537.86 | $2537.86 | 12/27/25 | Debtor |
| Shell Point | Secured | $2537.86 | $2537.86 | 01/03/25 | Debtor |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Version 02/03/2020**

## Appendix E-4.B

(Summary of Payments to
Trustee to Fund Plan)

| Payments by Debtor to Trustee During Term of Plan (if applicable) | |
|---|---|
| **Payment Date** | **Payment Amount** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Version 02/03/2020**

**Appendix F**

(Assumed Executory Contracts and
Unexpired Leases)

| Name and Address of Party to Debtor's Executory Contract | Description of Executory Contract [Or Contract ID No.] | Proposed Cure Amount and Anticipated Date of Cure Payment |
|---|---|---|
| Tenant – Kamose Tao | Rental Agreement | $0.00 |
| Tenant – Fahima Diop | Rental Agreement | $0.00 |
| Tenant – Greenville Peace | Rental Agreement | $0.00 |
| Tenant – Fatuma | Rental Agreement | $0.00 |
| | | |